No. 21-1268

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

MICHAEL LISSACK,

Petitioner-Appellant

v.

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee

ON APPEALS FROM THE DECISION OF THE
UNITED STATES TAX COURT

BRIEF OF NATIONAL WHISTLEBLOWER CENTER AS *AMICUS
CURIAE* IN SUPPORT OF PLAINTIFF-APPELLANT

Dean Zerbe
Zerbe, Miller, Fingeret,
Frank & Jadav LLP
1455 Pennsylvania Ave. NW
Suite 300
Washington, D.C. 20004
Tel: 713-350-3519
dzerbe@zmflaw.com

Stephen M. Kohn
Kohn, Kohn, and Colapinto, LLP
1710 N Street NW
Washington, D.C. 20036
Tel: 202-342-6980
sk@kkc.com

Table of Contents

Table of Authorities………………………………………………………… iii

Statement of Interest of *Amicus Curiae*…………………………………..……1

Consent of the Parties…………………………………………………………3

Corporate Disclosure Statement………………………………………………4

Rule 29(a)(2) Statement ………………………………………………………4

Summary of the Argument……………………………………………………5

Argument………………………………………………………...……………6

    1.    The Legislative History of Section 7623(b) and Relevant Context Supports De Novo Review………………………………………………………………6

        a.  The 2004 Amendment Creating Section 7623(b) had a Primary Goal of Creating "Greater Certainty" and Allowing for an "Independent Review"……………………………………………6

        b.  The 2005 Amendment and Subsequent Response……..……...…10

        c.  The 2006 Statute Further Supports De Novo Review…………………………………………….....12

            i.  Different Words, Different Meanings……………………12

        d.  The Context Surrounding Section 7623(b) Supports De Novo Review……………………………………………………...14

Conclusion………………………………………...…………………………20

<u>Table of Authorities</u>

**Cases**

*Agyeman v. INS*, 296 F.3d 871 (9th Cir. 2002)……………………………………………………………... 20

*Beck v. Prupis*, 529 U.S. 494 (2000)……………………………………………………..….. 1

*Bostock v. Clayton Cnty., Ga.*, 140 S.Ct. 1731 (2001)…………………………………………………… 7

*Castigliola v. Comm'r*, T.C. Memo. 2017-62 (2017)……………………………… …………………………..…… 20

*Church of Scientology of Cal. v. IRS*, 108 S.Ct. 271 (1987)…………………………………………………….. 12

*Cooper v. Comm'r*, 135 T.C. 70 (2010)……………………………………………...……18

*Doe v. Chao*, 540 U.S. 614 (2004)…………………………………………………… 1

*EEOC v. Waffle House*, 534 U.S. 279 (2002)…………………………………………………… 1

*English v. Gen. Elec.*, 496 U.S. 72 (1990)…………………………………………………… 1

*Estate of Lassiter v. Comm'r*, T.C. Memo. 2000-324 (2000)……………………………………………… 9

*Fowler v. Commissioner*, T.C. Memo. 2004-163 (2004)………………………..…… 9

*Gates v. Commissioner*, 135 T.C. 1 (2010)……………………………………………...… 20

*Haddle v. Garrison*, 525 U.S. 121 (1998)…………………………………………………… 1

*Huffman v. Office of Pers. Mgmt.*, 263 F.3d 1341 (2001)………………………………………………… 7

*Jones v. Comm'r*, 97 T.C. 7 (1991)………………………………………………….………..10

*Kan. Gas & Elec.Co. v. Brock*, 780 F.2d 1505 (10th Cir. 1985)……………………………………………………………… 1

*Kasper v. Comm'r*, 150 T.C. No. 2 (2018)………………………….. 5, 7, 13, 20

*K Mart Corp. v. Cartier*, 486 U.S. 281 (1988)……………………… ………………………...…….. 15

*Mann v. Heckler & Koch Defense*, 630 F.3d 338 (4th Cir. 2010)……………………………………………………………… 1

*Marshall v. Marshall,* 547 U.S. 293 (2006)……………………………………………………… 9

*Matuszak v. Comm'r*, 862 F.3d 192 (2d Cir. 2017)…………………………… ………………………….………..19

*Milner v. Dept. of Navy*, 562 U.S. 562 (2011)……………………………………………...…….…7

*Murphy v. Comm'r*, 125 T.C. 301 (2005)………………………………… ……………………….….. 9

*Myers v. Comm'r*, 928 F.3d 1025 (D.C.C. 2019)…………………………...… 19

*Nauflett v. Comm'r*, 892 F.3d 649 (4th Cir. 2018)…………………………...… 19

*Perez–Lastor v. INS*, 208 F.3d 773 (9th Cir. 2000)……………………………… 20

*Perrin v. United States*, 444 U.S. 37 (1979)……………………….………..... 20

*Robinette v. Comm'r*, 439 F.3d 455 (8th Cir. 2006)…………………………… 8, 9

*Rubel v. Comm'r*, 856 F.3d 301 (3d Cir. 2017)…………………………… ………………………………....… 19

*Russello v. United States*, 464 U.S. 16 (1983)…………………………….....… 13

*Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145 (2013)………………………………………………………….. 19

*Skrizowski v. Commissioner*, T.C. Memo. 2004–229 (2004)……………………………………………………………… 9

*Stone v. Instrumentation Lab. Co.*, 591 F.3d 239 (4th Cir. 2009)………………………… ……………………………..……1

*Taylor v. Comm'r*, T.C. Memo. 2017-132 (2017)……………………………………………………...……… 15

iv

*United States v. Enmons*, 410 U.S. 396, 405 (1973)……………………………… 7

*United States v. Wong Kim Bo*, 472 F.2d 720 (5th Cir. 1972)………………………………………………………………………... 13

*Van Bemmelen v. Comm'r*, 155 T.C. 4 (2020)………………………………………………………………………..… 13

*Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765 (2000)…………………………………………………………………… 1

*Whistleblower 11332-13W v. Comm'r*, 142 T.C. 396 (2014) …………………… 15

*Whistleblower 21276-13W v. Comm'r*, 144 T.C. 290 (2015)…………………... 13

*Whistleblower 21276-13W v. Comm'r*, 147 T.C. 121 (2016)………………….... 2

*Woodral v. Commissioner*, 112 T.C. 19 (1999)………………………………………………………………………… 9

**Filings**

Opening Br. for Resp't, *Kasper v. Comm'r,* No. 22242–11W (T.C.)………………………………………………………………...…………… 6

Pet'r's Opening Brief, *Lissack v. Comm'r*, No. 21-1268 (D.C.C.)……………..…1

**Statutes**

26 U.S.C. § 7623……………………………………………………………...…… ~

**Other Authorities**

151 Cong. Rec. S. 9472………………………………………………...……11

Allen Kennedy, <u>News Analysis: Critics Question Whistleblower Proposal in Senate ETI Bill</u>, Tax Notes, July 12, 2004…………………………………………………………………… 8

Anthony Scalia & Bryan A. Garner, <u>Reading Law: The Interpretation of Legal Texts</u> (2012)……………………………… 5, 14, 20.

Dean Zerbe, <u>A Legislative History of the Modern Tax Whistleblower Program</u>, Tax Notes, Oct. 26, 2020……………………………………………………6, 15

Dennis Ventry, Jr., <u>Whistleblowers and Qui Tam for Tax</u>, Tax Lawyer, Vol. 61, No. 2, 357 (2007)……………………………………………………………… 16

Kenneth W. Gideon, <u>ABA Tax Section Suggests Modifications to Highway Bill</u>, Tax Notes, June 13, 2005………………………………………………...……… 12

Norman Singer, 2A *Sutherland Statutory Construction* § 48:3 (7th ed.)……..….…5

Press Release, United States Senate Committee on Finance, Grassley: Report Shows IRS Could Better Use Whistleblowers to Catch Tax Cheats (June 9, 2006)………………………………………………………………………….….. 17

*Report of Treasury Inspector General for Tax Administration,* The Informants' Rewards Program Needs More Centralized Management Oversight, No. 2006-30-092 (June 2006)…… …………………………………………………...……17, 18

S. Rep. No. 31-502 (2007)…………………………………………………18

S. Rep. No. 110-1 (2007)…………………………..……………………… 18

Safe, Accountable, Flexible, Efficient Transportation Equity Act: Legacy for Users, H.R.3, 109th Cong. § 5508 (2005)…………………………….……… 10

<u>Senate Finance Committee Staff Summarizes Revenue Offsets for SAFETEA Bill</u>, Tax Notes, May 10, 2005……………………………………………… 11

Tax Analysts, <u>Grassley Amendment No. 3133 Passes Senate</u>, Tax Notes, May 11, 2004…………………………………………………………………… 8, 10

Tax Analysts, <u>Safe, Accountable, Flexible, Efficient, Transportation Equity Act: A Legacy for Users (P.L. 109-59)</u>, Tax Notes, August 10, 2005…………………………………………………………………… 10

Tax Analysts, <u>U.S. Senate Finance Committee Sums Up JOBS Act Amendments</u>, Tax Notes, May 13, 2004…………………………………………………………………… 8

Tax Shelter and Tax Haven Reform Act of 2005, S. 1565, 109th Cong. § 206 (2005)…………… ……………………………………………… 11

Terri Gutierrez, <u>IRS Informants Reward Program: Is it Fair?</u>, Tax Notes, Aug, 23, 1999…………………………………………………………………… 16

The Jumpstart Our Business Strength Act, S. 1637, 108th Cong. § 488 (2004)...8, 10

## STATEMENT OF INTEREST OF AMICUS CURIAE

The National Whistleblower Center (the "NWC") respectfully submits this memorandum of law as *amicus curiae*. *Amicus* asks the Court to accept this brief and urges the U.S. Court of Appeals for the D.C. Circuit ("D.C. Circuit") to rule in favor of Petitioner and reverse the U.S. Tax Court's ("Tax Court") ruling, particularly regarding a *de novo* standard of review being proper for cases brought to review under Internal Revenue Code (IRC) § 7623(b) ("Section 7623(b)").[1]

The NWC was founded in 1988 and has long been recognized as a leading voice for whistleblowers by policymakers in Washington, D.C. The NWC and associated attorneys regularly work with tax whistleblowers who have filed submissions with the Internal Revenue Service (the "IRS") under Section 7623(b). The NWC has also served as *amicus curiae* in several cases.[2]

Counsel for *amicus* are particularly well suited to provide this Court necessary insight into the legislative intent and historical backdrop behind the statute at issue. Dean Zerbe and Stephen M. Kohn are widely recognized as two of

---

[1] Pet'r's Opening Brief, *Lissack v. Comm'r*, No. 21-1268 (D.C.C.).

[2] *E.g., Doe v. Chao*, 540 U.S. 614 (2004), *EEOC v. Waffle House*, 534 U.S. 279 (2002), *Beck v. Prupis*, 529 U.S. 494 (2000), *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765 (2000), *Haddle v. Garrison*, 525 U.S. 121 (1998), *English v. Gen. Elec.*, 496 U.S. 72 (1990), *Kan. Gas & Elec.Co. v. Brock*, 780 F.2d 1505 (10th Cir. 1985), *Mann v. Heckler & Koch Defense*, 630 F.3d 338 (4th Cir. 2010), *Stone v. Instrumentation Lab. Co.*, 591 F.3d 239 (4th Cir. 2009).

the nation's leading whistleblower attorneys, with both having represented some of the most successful tax whistleblowers in the program's history, including Bradley Birkenfeld, who obtained the largest whistleblower award in the history of the IRS Whistleblower Program. Dean Zerbe and Stephen Kohn have both successfully litigated influential tax whistleblower cases in this Court, including the seminal case of *Whistleblower 21276-13W v. Commissioner*, which clarified the definition of "collected proceeds," and was later codified by Congress.[3]

Particularly of note for this specific issue is Dean Zerbe's unique insight on the legislative history and intent behind the drafting of Section 7623(b)(1). From 2001 to 2008, Dean Zerbe served as Senior Counsel and Tax Counsel for Chairman of the Senate Finance Committee, and author of the statute, Senator Charles E. Grassley (hereinafter referred to as "Chairman Grassley"). As counsel, Dean Zerbe was instrumental in the drafting of the 2006 statute that ultimately established the IRS Whistleblower Office, awards program, and appeals option for tax whistleblowers.

*Amicus* believes that this brief brings to this Court's attention issues that have not been completely briefed, or discussed, before the D.C. Circuit, especially as to the importance of the specific language used in the statute and Congress's

---

[3] *Whistleblower 21276-13W v. Comm'r*, 147 T.C. 121 (2016).

2

clear intent when it enacted the law. *Amicus* will review the historical context and intent behind the statute as it was drafted.

It is certainly not an overstatement to say that the future success of the IRS Whistleblower Program is in the hands of this Court. To allow the IRS to have full discretion over the decision-making process for rewarding these whistleblowers without appropriate judicial review would result in an inevitable chilling effect on the IRS Whistleblower Program. To do so would return the program to the failures of the previous discretionary program with its arbitrary and capricious standard of review, exactly what Congress intended to prevent with the 2006 amendments. A failure to act by the Court would bring harm to those whistleblowers who have bravely stepped forward with critical details of tax evasion and would create a disincentive for future informants to come forward with beneficial information.

## CONSENT OF THE PARTIES

All parties to this appeal have consented to the National Whistleblower Center's filing an amicus brief in this case.

## CORPORATE DISCLOSURE STATEMENT

The National Whistleblower Center ("NWC") is a non-profit tax-exempt educational and charitable publicly supported non-partisan organization. The NWC has no shareholders, is not publicly owned, and has no parent company.

## RULE 29(a)(2) STATEMENT

(i)    No party's counsel authored the brief in whole or in part;

(ii)   No party or a party's counsel contributed money that was intended to fund preparing or submitting the brief; and

(iii)  No person—other than the amicus curiae, its members, or its counsel—contributed money that was intended to fund preparing or submitting the brief.

# SUMMARY OF THE ARGUMENT

In determining the appropriate standard of review for claims brought under Section 7623(b)(1), the question before this Court is straightforward under the fixed-meaning canon of statutory construction, which states that words "must be given the meaning they had when the text was adopted."[4] A review of the statute through its legislative history and relevant context leaves no doubt that the meaning of the words in the statute's text when adopted by Congress meant to provide for *de novo* review for 7623(b)(1) claims.[5] Unfortunately, the legislative history has not been adequately considered, particularly in the lower court's case, *Kasper v. Commissioner*.[6]

This will be the first opportunity for this Court to fully examine the legislative history of the whistleblower provision from its beginnings in 2004. As explained below, the legislative history of Section 7623(b) and its relevant context show that, from its first introduction in 2004, the statute was intended and understood to provide for "independent review," meaning *de novo* review. Further

---

[4] Anthony Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 78 (2012).

[5] *See* Norman Singer, 2A *Sutherland Statutory Construction* § 48:3 (7th ed.) (The fixed meaning canon also gives rise to the "circumstances under which an act was passed, the mischief at which it was aimed. And the statute's 'object' or 'purpose.'").

[6] *Kasper v. Comm'r*, 150 T.C. No. 2 (2018).

changes in the statute from 2004 to 2006 also underscore that Congress intended

for *de novo* review. Through enacted legislation, Congress sought to "strengthen"

the IRS Whistleblower Program and address "perceived problems" related to the

then-existent, and failing, tax whistleblower award program. This was done in a

variety of ways, including transferring jurisdiction of tax whistleblower cases from

the U.S. Court of Federal Claims, which utilized an arbitrary and capricious review

standard, to the Tax Court, with its long history and tradition of *de novo* review,

further supporting a finding of *de novo* review.

## ARGUMENT

1. ### The Legislative History of Section 7623(b) and Relevant Context Supports *De Novo* Review

   a. *The 2004 Amendment Creating Section 7623(b) had a Primary Goal of Creating "Greater Certainty" and Allowing for an "Independent Review"*

   As with historians who believe the story of America starts with the

Mayflower, the IRS has historically taken the position that the legislative history of

the modern IRS whistleblower provision starts on September 19, 2006.[7] The lower

court in *Kasper* unfortunately follows the IRS to Plymouth Rock, stating the

---

[7] Opening Br. for Resp't, 23, *Kasper v. Comm'r,* No. 22242–11W (T.C.) ("While there is no legislative history concerning section 7623(b) . . . "); *See also* Dean Zerbe, <u>A Legislative History of the Modern Tax Whistleblower Program</u>, Tax Notes, Oct. 26, 2020.

legislative history of Section 7623(b) ". . . sheds no light on this darkness."[8] The

courts have found statements regarding original bill iterations particularly relevant

for the understanding of a statute, particularly when the language initially used was

substantially carried forward into the final provision that became law.[9]

The reality is that the legislative history of Section 7623(b) starts in May

2004, when Chairman Grassley introduced Section 488 of the Jumpstart Our

---

[8] *See Kasper*, 150 T.C. No. 2 at 14 (2018) (*Amicus* will not burden the court with a
long discussion on the benefits of legislative history to assist this Court in its work
beyond referencing the U.S. Supreme Court's stance that although "legislative
history can never defeat unambiguous statutory text, historical sources can be
useful for a different purpose." (Quoting *Bostock v. Clayton Cnty., Ga.*, 140 S.Ct.
1731, 1750 (2001); *See also Milner v. Dept. of Navy*, 562 U.S. 562, 574 (2011)
("Legislative history, for those who take it into account, is meant to clear up
ambiguity, not create it.").).

[9] *See United States v. Enmons*, 410 U.S. 396, 405 n. 14 (1973) (In quoting from
remarks by Congressman Hobbs upon introduction of the original bill: "The
remarks with respect to that bill, H.R. 653, 78th Cong., 1st Sess., which passed
only the House, are wholly relevant to an understanding of the Hobbs act, since the
operative language of the original bill was substantially carried forward into the
Act...Surely an interpretation placed by the sponsor of a bill on the very language
subsequently enacted by Congress cannot be dismissed out of hand, as to the
dissent would have it, simply because the interpretation was given two years
earlier."); *See also Huffman v. Office of Pers. Mgmt.*, 263 F.3d 1341, 1347 n. 1
(2001) (On quoting a Committee report on the Whistleblower Protection Act
(WPA): "This legislative history of this law relates to a version of the WPA that
President Reagan pocket-vetoed after the 100th Congress adjourned. In the 101st
Congress, the WPA was reintroduced, passed and signed into law on April 17,
1989. Congress did not release committee reports, but it is proper for us to look at
the legislative history from the 100th Congress for guidance in interpreting the
WPA, because the language did not change.").

Business Strength (JOBS) Act, effectively creating Section 7623(b).[10] The

provision proposed by Chairman Grassley would have created a mandatory award

ranging between 15 and 30 percent, provided for Tax Court review after

transferring jurisdiction from the Court of Federal Claims, and created a

Whistleblower Office within the IRS.[11] In short, in all of its key elements, the 2004

amendment creating Section 7623(b) was the same as what was ultimately signed

into law in 2006.[12]

The Senate Finance Committee released a description of all the amendments

adopted by the Senate in S. 1637, the Jumpstart Our Business Strength (JOBS) Act

on May 13, 2004.[13] Regarding the creation of Section 7623(b), the summary stated:

---

[10] The Jumpstart Our Business Strength Act, S. 1637, 108th Cong. § 488 (2004), *available at* Tax Analysts, Grassley Amendment No. 3133 Passes Senate, Tax Notes, May 11, 2004; *See also Robinette v. Comm'r*, 439 F.3d 455 (8th Cir. 2006) (It should be noted that this proposal, which eventually failed to pass the House, preceded the Sept. 19, 2006, U.S. Court of Appeals for the Eighth Circuit decision in *Robinette v. Comm'r*, by two years).

[11] *Id.*

[12] Commentators have erroneously viewed that the sole impetus behind the Section 7623(b) amendments was a TIGTA report of 2006. While the TIGTA report, done at the request of Chairman Grassley, was helpful and important, the Senate Finance Committee staff had been conducting a review of the IRS Whistleblower Program even before the 2004 amendment.

[13] Tax Analysts, U.S. Senate Finance Committee Sums Up JOBS Act Amendments, Tax Notes, May 13, 2004; The 2004 Grassley amendment creating Section 7623(b) was well-known in the tax community;  Allen Kennedy, News Analysis: Critics Question Whistleblower Proposal in Senate ETI Bill, Tax Notes, July 12, 2004; (It should be noted that Chairman Grassley's proposed amendment did not go unnoticed, with critics questioning the proposal heavily).

The proposal provides *greater certainty* and *independent review* for whistleblowers who are seeking a cash award for providing assistance to the IRS.[14]

The lower court has long interpreted "independent review" to mean *de novo* review.[15] As important, the lower court has long understood and interpreted "arbitrary and capricious" to *not* mean independent review.[16] Further, "greater

---

[14] *Id.* (emphasis added); (The U.S. Court of Appeals for the Eighth Circuit in *Robinette v. Commissioner* acknowledged the IRS and the Petitioner agreeing to an abuse of discretion review standard for Section 6330 disputes, explicitly citing to a House Report using language to that effect. Here, the IRS attempts to ignore the above cited commentary from the Senate Finance Committee clearly indicating the legislature's intent to "greater certainty" through an "independent review," meaning a de novo review.) (*See Robinette v. Comm'r*, 439 F.3d 455, 458 (8th Cir. 2006)).

[15] *See Estate of Lassiter v. Comm'r*, T.C. Memo. 2000-324, 8 (2000) ("As we have previously established, a trial before the Tax Court is a proceeding *de novo*… In carrying out this mandate here, we cannot substitute selected conclusions made by respondent in administrative papers for our own. We instead must engage in an *independent review* of the facts and application of law thereto." (emphasis added)); *See also Marshall v. Marshall,* 547 U.S. 293, 303 (2006) ("In noncore matters, a bankruptcy court may not enter final judgment; it has authority to issue only proposed findings of fact and conclusions of law, which are reviewed *de novo* by the district court. See § 157(c)(1). Accordingly, the District Court treated the Bankruptcy Court's judgment as "proposed[,] rather than final," and undertook a "comprehensive, complete, and *independent review* of" the Bankruptcy Court's determinations." (emphasis added)).

[16] *See Murphy v. Comm'r*, 125 T.C. 301, 320 (2005) ("We do not conduct an independent review of what would be an acceptable offer in compromise. *Fowler v. Commissioner*, T.C. Memo. 2004-163. The extent of our review is to determine whether the Appeals officer's decision to reject the offer in compromise actually submitted by the taxpayer was arbitrary, capricious, or without sound basis in fact or law. *Skrizowski v. Commissioner*, T.C. Memo. 2004–229; *Fowler v. Commissioner*, supra; *see Woodral v. Commissioner*, 112 T.C. 19, 23, 1999 WL 9947 (1999).").

certainty" is fairly read as speaking to *de novo* review given that whistleblowers were already subject to the arbitrary and capricious review standard by the Court of Federal Claims.[17]

### b. *The 2005 Amendment and Subsequent Response*

The 2004 amendment creating Section 7623(b) passed the Senate, but was later dropped in the House-Senate conference.[18] However, Chairman Grassley revived the amendment creating Section 7623(b) in 2005.[19] The language used in the 2005 amendment was essentially the same as the language in the 2004 amendment.[20] The Senate Finance Committee released a public memorandum describing the provisions, including the whistleblower provision, and again stated: "This provision provides *greater certainty and independent review for*

---

[17] *Jones v. Comm'r*, 97 T.C. 7, 18 (1991) (It is well-established that "a trial before this Court is a proceeding de novo.").

[18] The Jumpstart Our Business Strength Act, S. 1637, 108th Cong. § 488 (2004), *available at* Tax Analysts, Grassley Amendment No. 3133 Passes Senate, Tax Notes, May 11, 2004.

[19] Safe, Accountable, Flexible, Efficient Transportation Equity Act: Legacy for Users, H.R.3, 109th Cong. § 5508 (2005), *available at* Tax Analysts, Safe, Accountable, Flexible, Efficient, Transportation Equity Act: A Legacy for Users (P.L. 109-59), Tax Notes, August 10, 2005.

[20] It should be noted that the 2005 provision did add Section 7623(b)(3), an anti-abuse provision stating that the Whistleblower Office *may* reduce awards where the whistleblower planned and initiated the action; and that the Whistleblower Office *shall* deny an award if the whistleblower is convicted of criminal conduct arising from the role of planning and initiating. The 2005 provision also made clear that it was in the *sole discretion* of the whistleblower office to ask for additional assistance from the whistleblower or their lawyer.

*whistleblowers* who are seeking a cash award for providing assistance to the IRS."[21] Again, the 2005 amendment passed the Senate, but the whistleblower provisions were dropped in conference.[22]

Senator Carl Levin also proposed legislation in 2005 that followed the language in Chairman Grassley's Section 7623(b) in most ways, except in one key aspect. Senator Levin's bill specifically gave the IRS *full discretion* in administering awards to whistleblowers.[23] Senator Levin's bill stated that the determination of any whistleblower award was to "be determined at the *sole discretion* of the Whistleblower Office."[24]

Senator Levin's comments on the 2004 and 2005 Section 7623(b) provisions put forward by Chairman Grassley and the Senate Finance Committee allowing for Tax Court review can be fairly read that Senator Levin interpreted Chairman Grassley's Section 7623(b) language as providing for *de novo* review, as he complains about "the fact-specific analysis" and the time and expenses involved. Just as Senator Levin's statement presumes *de novo* review, informed

---

[21] Senate Finance Committee Staff Summarizes Revenue Offsets for SAFETEA Bill, Tax Notes, May 10, 2005, *available at* https://www.taxnotes.com/tax-notes-today-federal/excise-taxation/senate-finance-committee-staff-summarizes-revenue-offsets-safetea-bill/2005/05/11/y8w5 (emphasis added).
[22] *Id.*
[23] Tax Shelter and Tax Haven Reform Act of 2005, S. 1565, 109th Cong. § 206 (2005).
[24] *Id; See also* 151 Cong. Rec. S. 9472, 9484.

commentators at the time discussed at length that the judicial review of whistleblower awards should be done by U.S. federal district courts given their experience with *qui tam* actions, experience that the Tax Court did not possess.[25]

### c. *The 2006 Statute Further Supports De Novo Review*

In the end, there were only minor changes made to the Section 7623(b) amendment from its first introduction in 2004 and 2005, to the final passage in December 2006. A close read of the statutory language first introduced, and finally passed in 2006, support a finding of *de novo* review.

### i. *Different Words, Different Meanings*

The lower court has correctly viewed as axiomatic for statutory construction that different language used in the same statute must have different meanings, and has applied this canon of statutory construction specifically to Section 7623(b), saying that when "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or

---

[25] Kenneth W. Gideon, <u>ABA Tax Section Suggests Modifications to Highway Bill</u>, Tax Notes, June 13, 2005; *see also Church of Scientology of Cal. v. IRS*, 108 S. Ct. 271, 276 (1987) ("All in all, we think this is a case where common sense suggests, by analogy to Sir Arthur Conan Doyle's 'dog that didn't bark,' that an amendment having the effect petitioner ascribes to it would have been differently described by its sponsor, and not nearly as readily accepted by the floor manager of the bill.").

exclusion."[26] The decision in *Kasper* failed to analyze and consider that Congress acted intentionally and purposely in the use of the words "shall," "determination," "may," and "sole discretion." Those words have a direct impact on the standard of review that should be applied.

Although the lower court in the recent case of *Van Bemmelen v. Commissioner* recognized that the "sole discretion" language signaled the standard of review, or the lack of a review, the Tax Court has never addressed the fact that there are marked differences in the use of "may" as discretionary language in Section 7623(b)(2) and (3), as well as the words "shall" and "determination" as mandatory award language in Section 7623(b)(1) and (3), and the resulting impact on judicial review.[27] The lower court's decision in *Kasper* leads to a result that treats the mandatory language in Section 7623(b)(1), and the discretionary language in Section 7623(b)(2) and (3), as all subject to the same arbitrary and capricious standard of review.

Congress was careful in its choice of these words, which are materially different, as they relate to actions by the IRS Whistleblower Office. While all

---

[26] *Whistleblower 21276-13W v. Comm'r*, Supp. 144 T.C. 290 (2016) (citing *Russello v. United States*, 464 U.S. 16, 23 (1983) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972)); *See also Whistleblower 22716-13W v. Comm'r*, 146 T.C., 97.

[27] *Van Bemmelen v. Comm'r*, 155 T.C. 4, 33 (2020).

Section 7263(b) cases are subject to *de novo* review in terms of the lower court determining the facts and law, the word choices signal the proper standards of review for the determination by the IRS. They are as follows: *de novo* for Section 7623(b)(1) awards, *de novo* for determinations of whether the anti-abuse provisions are triggered for Section 7623(b)(2) and (3), arbitrary and capricious for payment determinations for the anti-abuse provisions of Section 7623(b)(2) and (3), and no review for electing to bring in the whistleblower or whistleblower's counsel to assist—within the IRS' "sole discretion."

### d.    The Context Surrounding Section 7623(b) Supports De Novo Review

The courts have long recognized that context can be key in correctly interpreting a statute with the use of the canons of presumption against ineffectiveness and the whole-text canon. First, the presumption against ineffectiveness ". . . ensures that a text's manifest purpose is furthered, not hindered."[28] "This canon follows inevitably from the facts that (1) interpretation always depends on context, (2) context always includes evident purpose, and (3) evident purpose always includes effectiveness."[29] In a similar vein, the whole-text

---

[28] Anthony Scalia & Bryan A. Garner, <u>Reading Law: The Interpretation of Legal Texts</u> 63 (2012).
[29] *Id.*

14

canon " . . . calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts." [30]

In that light, what is the context of Section 7623(b), and what was the problem that Congress was seeking to address? The lower court has stated in a number of cases, including *Whistleblower 11332-13W v. Commissioner*, that Congress enacted the statute in 2006 to address "perceived problems" with the awards program.[31] *Amicus curiae* has written extensively on the history and context surrounding the statute, and the Tax Court has recognized that part of the context of Section 7623(b), and fixing the perceived problems, was judicial review—particularly by providing the Tax Court jurisdiction.[32]

As noted earlier, prior to 2004, the Senate Finance Committee had been reviewing and conducting oversight of the problems of the whistleblower program. In discussions with informed practitioners, particularly lawyers with experience in the False Claims Act, academics, and briefings by the IRS, it was clear to

---

[30] *Id.* at 167; *See also Taylor v. Comm'r*, T.C. Memo. 2017-132, 15 (2017) (Citing *K Mart Corp. v. Cartier*, 486 U.S. 281, 291 (1988)) (Looking "to the particular statutory language at issue, as well as the language and design of the statute as a whole.").

[31] *Whistleblower 11332-13W v. Comm'r*, 142 T.C. 396, 400 (2014) (emphasis added).

[32] Dean Zerbe, A Legislative History of the Modern Tax Whistleblower Program, Tax Notes, Oct. 26, 2020.

Committee investigators that the program, including judicial review by the Court of Federal Claims, was in shambles. [33]

The state of play for the IRS Whistleblower Program and judicial review of whistleblower decisions in early 2000 is particularly well-reflected in a detailed review of the program and incentives provided by Terri Gutierrez, an accounting professor who in 1999 put forward a thoughtful analysis in *Tax Notes*.[34] Particularly concerning was Professor Gutierrez's finding that the IRS "does not seem to follow its own guidelines . . .."[35] More important, Professor Gutierrez conducted a survey of every case brought by whistleblowers to the Court of Federal Claims, previously known as the U.S. Court of Claims, seeking to obtain an award from 1941 to 1998.[36] There were 19 cases in total, and as Professor Gutierrez notes, the IRS won every single case—the court finding that in each instance, the IRS had not abused its discretion.[37]

Professor Gutierrez also found that the IRS failed to follow its own whistleblower award guidelines, while noting how difficult it was for

---

[33] *See* Dennis Ventry, Jr., <u>Whistleblowers and Qui Tam for Tax</u>, Tax Lawyer, Vol. 61, No. 2, 357, 3678 (2007).
[34] Terri Gutierrez, <u>IRS Informants Reward Program: Is it Fair?</u>, Tax Notes, Aug, 23, 1999.
[35] *Id.*
[36] *Id.*
[37] *Id.*

whistleblowers to make a case. According to Professor Gutierrez, "courts are reluctant to override administrative authority where Congress has given duties to department heads that require them to exercise judgment and discretion unless there is evidence that the decisions are clearly wrong."[38]

Then came the release of the TIGTA report on June 9, 2006.[39] The report, titled "The Informants' Rewards Program Needs More Centralized Management Oversight," was created at the request of Chairman Grassley.[40] The TIGTA report made it clear that the chances of an erroneous decision as to a whistleblower award were extremely high while providing a generally devastating indictment as to the IRS Whistleblower Program in whole, with Chairman Grassley commenting on its release:

> TIGTA's report makes clear that the IRS and Treasury still are far short in having a professional, effective office to benefit from whistleblowers. For example, in 76 percent of the claims rejected, TIGTA was unable to determine the rationale for the reviewer's decision to reject the claim. This has to stop.[41]

---

[38] *Id.*

[39] *See Report of Treasury Inspector General for Tax Administration,* The Informants' Rewards Program Needs More Centralized Management Oversight, No. 2006-30-092 (June 2006), *available at* http://www. whistleblowers.org/storage/whistleblowers/docs/birk/tigtareport2006-30-092.pdf.

[40] *Id.*

[41] Press Release, United States Senate Committee on Finance, Grassley: Report Shows IRS Could Better Use Whistleblowers to Catch Tax Cheats (June 9, 2006), *available at* https://www.finance.senate.gov/chairmans-news/grassley-report-shows-irs-could-better-use-whistleblowers-to-catch-tax-cheats; *see also Report of*

The Joint Committee on Taxation Bluebook description of Section 7623(b)

specifically cites to the TIGTA report and the need for IRS guidance related to

Section 7623(b) to address the recommendations in the report.[42] The lower court

has also repeatedly recognized the TIGTA report as a key factor in the passage of

Section 7623(b) and has cited to the findings of TIGTA. For example, in one of the

first Tax Court cases addressing Section 7623(b), *Cooper v. Commissioner*, the

lower court cites to the TIGTA report, stating: "The

discretionary whistleblower awards have been *arbitrary and inconsistent*, however,

because of a lack of standardized procedures and limited managerial oversight."[43]

Thus, it is well established that the "perceived problems" Chairman Grassley

and Congress sought to address with Section 7623(b) were fourfold. One, basic

management and administration of the IRS Whistleblower Program had been

arbitrary and woefully inadequate; two, whistleblowers were not incentivized to

---

*Treasury Inspector General for Tax Administration,* The Informants' Rewards
Program Needs More Centralized Management Oversight at 2 and 7 (noting that
the pre-2006 IRS Whistleblower Program lacked "standardized procedures," was
plagued by "limited management oversight," and that up to 45 percent of claims
filed had "basic control issues," including missing forms); *See also* S. Rep. No.
110-1, at 66 (2007); *See also Cooper v. Comm'r*, 135 T.C. 70, 73-74 (2010)
(noting that discretionary whistleblower awards under prior law had been
"arbitrary and inconsistent," contrasting prior law with the 2006 Act, which
"require[s] the Secretary to pay nondiscretionary awards").
[42] S. Rep. No. 31-502, at 745 (2007).
[43] *Cooper v. Comm'r*, 135 T.C. 70, 72-73 (2010) (emphasis added).

come forward and were ignored when they did come forward; three, the denials of awards, as well as the award percentages, were haphazard, inconsistent, and not properly documented; and four, compounding all these problems, whistleblowers had no place to turn for relief given they were provided no independent review by the Court of Federal Claims. In short, the decisions by the IRS were inherently arbitrary and coupled with a wholly inadequate judicial review by the Court of Federal Claims based on an arbitrary and capricious standard of review.

Also, critical to note regarding statutory interpretation is that this Court has directly rejected a "magic words" test in a case considering the precise statutory provision at issue here. In *Myers v. Commissioner*, the D.C. Circuit cited to the Supreme Court in its analysis of Section 7623(b), stating "…we are not saying the Congress must 'incant magic words in order to speak clearly.'"[44] In *Myers*, the D.C. Circuit engaged in a review of the legislative intent and context of the legislation to assist in its determination in favor of the whistleblower finding that the filing period for Section 7623(b)(4) is subject to equitable tolling.[45] It should be

---

[44] *Myers v. Comm'r*, 928 F.3d 1025, 1035 (D.C.C. 2019) (citing *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. at 153, 133 S.Ct. 817.) ("The Congress need only include words linking the time period for filing to the grant of jurisdiction. *See, e.g., Nauflett v. Comm'r*, 892 F.3d 649, 652 (4th Cir. 2018); *Rubel v. Comm'r*, 856 F.3d 301, 306 (3d Cir. 2017); *Matuszak v. Comm'r*, 862 F.3d 192, 197-98 (2d Cir. 2017).").

[45] *Id.* at 1037. ("None of these other indicators of legislative intent is present in this case:  The Tax Court is not an 'internal' 'administrative body' and Tax Court

noted that this Court's opinion in favor of the whistleblower was decided in 2019, after the lower court's ruling in *Kasper*.[46]

This Court should reject the embracing of a requirement for "magic words" and instead look to the context and legislative history of Section 7623(b), which supports a finding of *de novo* review for mandatory awards under Section 7623(b).

## **CONCLUSION**

It is clear through the legislative history of Section 7623(b) and its context that the legislation's words were understood to establish a *de novo* review.[47] The lower court's decision in *Kasper* fails to recognize that Section 7623(b), as a whole, was enacted to strengthen all elements of the IRS Whistleblower Program, including judicial review. The statutory history, fixed meaning, venue of challenge, as well as the historic and current execution of the IRS Whistleblower Statute alongside the judicial review provided by the U.S. Court of Federal Claims, leans

---

petitioners are typically pro se, individual taxpayers who have never petitioned the Tax Court before.  Moreover, the IRS points to no regulation or history of legislative revision that might contradict the *Irwin* presumption.").

[46] *See* Anthony Scalia & Bryan A. Garner, <u>Reading Law: The Interpretation of Legal Texts</u> 78 (2012). *See also Castigliola v. Comm'r*, T.C. Memo. 2017-62, 9 (2017) ("It is a well-established rule of construction that if a statute does not define a term, the term is to be given its ordinary meaning at the time of enactment. *Gates v. Commissioner*, 135 T.C. 1, 6 (2010); see *Perrin v. United States*, 444 U.S. 37, 42 (1979).").

[47] *Agyeman v. INS*, 296 F.3d 871, 876 (9th Cir. 2002) (Citing *Perez–Lastor v. INS*, 208 F.3d 773, 777 (9th Cir. 2000)) ("Because our standard of review is de novo, we conduct an independent examination of the entire record.").

heavily in favor of *de novo* review. To the extent that Section 7623(b)(1) is

ambiguous, the above argues that the statute should be construed in favor of

whistleblowers, allowing for a thorough independent judicial review process that

takes all facts and circumstances surrounding the disputed claim into consideration.

Respectfully submitted,

**s/ Dean Zerbe**

Dean Zerbe
Zerbe, Miller, Fingeret, Frank &
Jadav LLP
1455 Pennsylvania Ave. NW
Suite 300
Washington, D.C. 20004
Tel: 713-350-3519
E-Mail: dzerbe@zmflaw.com

**s/ Stephen M. Kohn**

Stephen M. Kohn
Kohn, Kohn, and Colapinto, LLP
1710 N Street NW,
Washington, D.C. 20036
Tel: 202-342-6980
E-Mail: sk@kkc.com

Counsel for *amicus curiae*

On Brief:

Matthew Beddingfield
Senior Associate

Zerbe, Miller, Fingeret, Frank & Jadav, LLP

Ben Falstein
Litigation Fellow
National Whistleblower Center

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS</u>

1. This document complies with Fed. R. App. P. 32(a)(7)(B)(i) & 29(a)(5) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f). [ ] this document contains 4,923 words, **or**
2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[x] this document has been prepared in a proportionally spaced typeface using Microsoft Word 2008 for Mac 12.3.6 in Times New Roman 14 point.

Date: April 26, 2022

**s/ Stephen M. Kohn**

Stephen M. Kohn
Kohn, Kohn, and Colapinto, LLP
1710 N Street NW,
Washington, D.C. 20036
Tel: 202-342-6980
E-Mail: sk@kkc.com

Counsel for *amicus curiae*

23

## <u>CERTIFICATE OF DIGITAL SUBMISSION</u>

I hereby certify that

a. All required privacy redactions have been made.

b. The hard copies of any pleading required to be submitted to the clerk's office are exact copies of the ECF filing.

<u>s/ Stephen M. Kohn</u>

Stephen M. Kohn
Kohn, Kohn, and Colapinto, LLP
1710 N Street NW,
Washington, D.C. 20036
Tel: 202-342-6980
E-Mail: sk@kkc.com

Counsel for *amicus curiae*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 26th day of April, 2022, a true and correct copy

of the foregoing *Amicus Brief* was electronically filed with the Clerk of Court

using the CM/ECF system, which will send notification of such filing to the

following persons listed below, and mailed on the 26th day of April, 2022:

Julie Avetta
202-616-2743
julie.c.avetta@usdoj.gov
US DOJ
Tax Division, Appellate Section
PO Box 502
Washington, DC 20044

Erica L. Brady-Gitlin, Esq.
Lynam Knott, P.A.
500 S. Pointe Dr., Suite 220
Miami Beach, FL 33139
202-775-1630 (Phone)
202-775-1634 (Direct)
202-775-1633 (Fax)
www.tax-whistleblower.com

**s/ Stephen M. Kohn**

Stephen M. Kohn
Kohn, Kohn, and Colapinto, LLP
1710 N Street NW,
Washington, D.C. 20036
Tel: 202-342-6980
E-Mail: sk@kkc.com

Counsel for *amicus curiae*